UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

EMORY BROOKS CONNER,
    Plaintiff,

v.                            Case No.: 5:25cv271/RH/ZCB

WALMART TIRE & LUBE CENTER,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* action that was filed in state court and later removed based on diversity jurisdiction. (Doc. 1). Defendant now moves for judgment on the pleadings on Counts III and IV of Plaintiff's third amended complaint (Doc. 1-4). (Doc. 10). Plaintiff has responded in opposition. (Doc. 14). For the reasons below, Defendant's motion should be granted.

### I.    The Allegations in the Third Amended Complaint[1]

On July 25, 2025, Plaintiff took his truck to Defendant's store in Panama City Beach for an oil change. (Doc. 1-4 at 1). Plaintiff alleges Defendant's employees "negligently failed to properly install the engine

---

[1] Plaintiff's allegations are assumed true at this stage. *DeVillier v. Texas*, 601 U.S. 285, 288 n.1 (2024).

1

oil cap after completing the service" leading to it being "loose or missing." (*Id.*).   Plaintiff claims the failure to properly install the oil cap "was negligent and created a foreseeable risk of damage to" his truck.  (*Id.*).

On July 26, 2025, Plaintiff used a pressure washer and degreaser to clean his truck's engine.  (*Id.*).  Due to the missing oil cap, Plaintiff unknowingly mixed chemicals in his truck's oil.  (*Id.*).  Plaintiff states this caused internal damage to the truck's engine.  (*Id.*).  Plaintiff alleges the engine damage led to other problems such as the truck's seatbelt sensors malfunctioning.  (*Id.*).  Plaintiff claims he was injured after the seatbelt disengaged unexpectedly.  (*Id.* at 2).  Plaintiff alleges the engine failure made him miss a meeting and suffer economic losses.  (*Id.*). Plaintiff claims he suffered emotional distress due to the engine damage and loss of transportation.  (*Id.*).

On August 14, 2025,[2] Defendant's employee "publicly yelled out [an] outrageous remark of 'alright Big Daddy'" at Plaintiff.  (*Id.*).  Plaintiff

---

[2] Plaintiff states this event occurred on August 14, 2024.  (Doc. 1-4 at 2). But it appears this event may have occurred on August 14, 2025.  (*Id.*) (noting that the "Big Daddy" remark caused "further emotional distress" and "an exacerbation of the Plaintiff's Preexisting injuries . . . .").

alleges this remark caused him mental and emotional distress and an exacerbation of preexisting physical injuries. (*Id.*).

Plaintiff brings four counts in his third amended complaint: (1) negligence for the damage to his truck; (2) negligence for injuries from the seatbelt malfunction; (3) negligent infliction of emotional distress for the "Big Daddy" remark; and (4) negligence for economic damages to Plaintiff's vehicle and his missed meeting. (Doc. 1-4 at 2-3). Plaintiff seeks $150,000 in damages plus interest and costs. (*Id.* at 3).

## II.    Legal Standard

Because Defendant simultaneously answered (Doc. 9) and moved to dismiss (Doc. 10), the Court construes the motion to dismiss as one for judgment on the pleadings under Rule 12(c). (*See* Doc. 13). *Jackson v. Williams Plant Servs., LLC*, No. 1:06cv1087, 2008 WL 11322913, at *3 (N.D. Ga. Dec. 22, 2008) ("Instead of recommending denial of the motions to dismiss on timeliness grounds, the undersigned construes Williams' motion to dismiss as a motion for judgment on the pleadings pursuant to Rule 12(c)." (collecting cases)). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Samara v. Taylor*, 38 F.4th 141, 152 (11th Cir. 2022).

3

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

## III. Discussion

In its motion, Defendant argues that Counts III and IV of the third amended complaint do not state plausible claims for relief. As to Count III, Defendant argues that Plaintiff has not plausibly alleged physical injuries to support a negligent infliction of emotional distress claim, nor has he plausibly alleged outrageous conduct for an intentional infliction of emotional distress claim. (Doc. 10 at 1-2). Defendant argues that Count IV fails to state a plausible claim or, alternatively, that Count IV

4

should be dismissed as duplicative of Count I. (*Id.* at 2). The Court will address Count IV before turning to Count III.

## A. Count IV should be dismissed because damages are not an independent cause of action and, to the extent it asserts a negligence claim, Count IV is duplicative of Count I.

Count IV of the third amended complaint is titled "Negligence (Economic Damages)." (Doc. 1-4 at 3). This count seeks damages regarding Plaintiff's truck and his missed business meeting. (*Id.*). Defendant argues that Florida law establishes that damages are remedies and not independent causes of action. (Doc. 10 at 9-10). Defendant also argues that Count IV is duplicative of Count I because any economic damages resulting from the damage to Plaintiff's truck are already covered by Count I. (*Id.* at 10-11). Plaintiff responds in opposition that Count IV is a plausible claim for negligence. (Doc. 14 at 5). The Court agrees with Defendant that Count IV should be dismissed.

Under Florida law, a plaintiff "must prove four elements to prevail" on a negligence claim: (1) a "duty or obligation . . . requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks"; (2) a "failure on the defendant's part to conform to the standard required: a breach of the duty"; (3) a "reasonably

close causal connection between the conduct and the resulting injury" known as "legal cause, or proximate cause, and which includes the notion of cause in fact"; and (4) "[a]ctual loss or damage." *Hodges v. United States*, 78 F.4th 1365, 1375 (11th Cir. 2023).

The Court has found no authority identifying an independent cause of action for economic damages in Florida.  But courts in Florida have routinely held that punitive damages are not independent claims or causes of action.  *See, e.g. Philip Morris USA, Inc. v. Hallgren*, 124 So. 3d 350, 355 (Fla. 2d DCA 2013) (noting "punitive damages are not an independent cause of action" but are "a remedy that must be asserted in conjunction with a substantive claim"); *Tarasewicz v. Royal Caribbean Cruises*, No. 14-CIV-60885, 2015 WL 1566398, at *2 (S.D. Fla. Apr. 8, 2015) ("[P]unitive damages are not a separate cause of action but part of a plaintiff's prayer for relief[.]").  The Court does not believe that this result should change when a plaintiff asserts a cause of action for economic rather than punitive damages.  The distinction between economic damages and punitive damages is one without a difference in this context as both are just different types of monetary relief.  At bottom, economic damages—like punitive damages—"are merely a remedy that

6

must be asserted in conjunction with a substantive claim." *Phillip Morris*, 124 So. 3d at 355. Accordingly, Count IV of the third amended complaint should be dismissed insofar as it asserts an independent cause of action for economic damages.

To the extent Count IV is a negligence claim for Plaintiff missing a business meeting after his truck was damaged, the Court believes such a claim is duplicative of the negligence claim asserted in Count I. "Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Letidas Logistics, LLC v. Citibank, N.A.*, 789 F. Supp. 3d 1121, 1131 (S.D. Fla. 2025). "To promote judicial economy, a court should dismiss claims that are duplicative of other claims." *Id.*

Count I is a negligence claim for the property damage to Plaintiff's truck. (Doc. 1-4 at 2). To the extent Count IV is a negligence claim regarding a missed business meeting, this claim is duplicative of Count I because the damage to Plaintiff's truck is the only stated reason for Plaintiff missing the meeting in the first place. Both Counts I and IV would be negligence claims, and any monetary damages for the missed

business meeting would naturally flow from the property damage to Plaintiff's truck—allegations already covered by Count I.

Accordingly, to the extent Count IV is a negligence claim regarding the truck damage causing Plaintiff to miss a meeting, Count IV should be dismissed as duplicative of Count I.

## B. Count III should be dismissed because Plaintiff does not plausibly allege any physical injury resulting from the "Big Daddy" remark, nor is the remark extreme and outrageous.

Count III of the third amended complaint is a claim for negligent infliction of emotional distress (NIED) based on Defendant's employee allegedly yelling "alright 'Big Daddy'" at Plaintiff.  (Doc. 1-4 at 2-3). Defendant argues that Plaintiff alleges no physical injury or impact resulting from the "Big Daddy" remark to support an NIED claim.  (Doc. 10 at 5-6).  Defendant further argues that Plaintiff fails to state an intentional infliction of emotional distress (IIED) claim because the remark was not extreme and outrageous.  (*Id.* at 6-9).  Plaintiff responds that Defendant's employee engaged in extreme and outrageous verbal abuse which caused Plaintiff to suffer severe emotional distress requiring medical treatment.  (Doc. 14 at 2, 4).  The Court agrees with Defendant that Plaintiff has not plausibly alleged either an NIED or IIED claim.

### 1. Negligent Infliction of Emotional Distress

"In Florida, the prerequisites for recovery for [NIED] differ depending on whether the plaintiff has or has not suffered a physical impact from an external force." *Malverty v. Equifax Info. Servs., LLC*, 407 F. Supp. 3d 1257, 1265 (M.D. Fla. 2019) (cleaned up). If the plaintiff suffered an impact, "Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself." *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007). If "the plaintiff has not suffered an impact, the complained-of mental distress must be 'manifested by physical injury,' the plaintiff must be 'involved' in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment 'within a short time' of the incident." *Id.*

This "impact rule is the rule of law followed in Florida applicable to cases in which the plaintiff claims mental or emotional damages but *has not sustained any physical impact or contact,* unless the claim falls within one of the recognized exceptions to the rule. When an impact or touching has occurred *the rule has no application.*" *Id.* (emphasis in original).

9

Here, Count III is based solely on Defendant's employee yelling "alright 'Big Daddy'" at Plaintiff.[3]  (Doc. 1-4 at 2-3).  Even if these words were insulting, they were just words and do not constitute any physical impact or contact.  *See Tello v. Royal Caribbean Cruises, Ltd.*, 939 F. Supp. 2d 1269, 1277 (S.D. Fla. 2013) ("The allegedly tortious conduct in this case—*i.e.,* a captain's communication to Margarita that her son had committed suicide—involved no physical impact to Margarita."); *see also Pipino v. Delta Air Lines, Inc.*, 196 F. Supp. 3d 1306, 1316 (S.D. Fla. 2016) ("As Pipino fails to cite any evidence—including from her own declaration—that any Delta employee touched her, she fails to satisfy the requirement of an 'impact.'").

---

[3] Plaintiff's response to the motion to dismiss says that the employee "yelled despairing and abusive remarks" at Plaintiff and did so "as if he was gang stalking the plaintiff." (Doc. 14 at 2, 4).  First, these allegations are unpled and thus inappropriate for the Court's consideration of the motion to dismiss.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is 'limited to the four corners of the complaint.'"); *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss.").  Second, these new allegations do not change the result.  Plaintiff fails entirely to explain what "gang stalking" is.  And regardless, the fact remains that Defendant's employee merely yelled at Plaintiff.  There is nothing to suggest that the employee even attempted to physically contact Plaintiff in any way.

Because there was no physical impact or contact, the impact rule applies to Plaintiff's NIED claim. *See Willis*, 967 So. 2d at 850. As such, "the complained-of mental distress must be 'manifested by physical injury,' the plaintiff must be 'involved' in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment 'within a short time' of the incident." *Id.*

Plaintiff alleges the "Big Daddy" remark caused "severe emotional distress . . . requiring medical treatment and medication." (Doc. 1-4 at 3). Plaintiff also claims the remark exacerbated preexisting physical injuries to his "Head, Neck, Shoulder, Wrist, Hands, Lumbar, Right Knee an[d] Left Foot" which required medical treatment. (*Id.* at 2). But Plaintiff fails to explain what these injuries are or specifically how they were "exacerbated" after the "Big Daddy" remark. Such conclusory allegations are insufficient. *See Nickerson v. HSNi, LLC*, No. 8:11cv538, 2011 WL 3584366, at *2 (M.D. Fla. Aug. 15, 2011) ("Although Plaintiff has alleged that he 'objectively and physically manifested emotional distress as a result of Defendant's actions,' this allegation is, at best, a

11

legal conclusion and provides no indication as to the seriousness of his alleged physical injury. As a result, the Complaint fails to plead facts which, when taken as true, state a claim for negligent infliction of emotional distress that is plausible on its face." (cleaned up)).

At bottom, Plaintiff's allegations of unspecified "exacerbation[s]" of preexisting injuries do not support an NIED claim because they do not sufficiently show manifestations of physical injuries resulting from the "Big Daddy" remark itself.  Accordingly, Plaintiff's NIED claim should be dismissed.[4]

## 2. Intentional Infliction of Emotional Distress

The Court notes that Count III of the third amended complaint is pleaded as "Negligent Infliction of Emotional Distress" rather than

---

[4] This is not a situation where Plaintiff alleged specific injuries flowing directly from the "Big Daddy" remark or explained how his preexisting injuries were exacerbated.  Allowing avoidance of the impact rule by vaguely alleging unidentified exacerbations of unspecified preexisting injuries would thwart the purposes of the rule. *See Corbin v. Prummell*, 655 F. Supp. 3d 1143, 1167 (M.D. Fla. 2023) (stating the impact rule requires that "psychological trauma must cause a *demonstrable* physical injury such as death, paralysis, muscular impairment, or similar *objectively discernible* physical impairment before a cause of action may exist" (emphasis added)); *Whiddon v. Serv. Corp. Int'l*, 626 F. Supp. 3d 1243, 1245 (N.D. Fla. 2022) ("[T]he impact rule serves primarily as a limitation to assure a *tangible* validity of claims for emotional or psychological harm." (cleaned up and emphasis added)).

intentional infliction of emotional distress.  (Doc. 1-4 at 3).  As discussed above, Plaintiff has not plausibly alleged an NIED claim.  But the Court construes Count III as also asserting an IIED claim given Plaintiff's *pro se* status and his references to intentionality and outrageousness, Defendant's arguments on IIED (Doc. 10 at 6-9), and Plaintiff's response discussing Count III as an IIED claim (Doc. 14 at 2-4).

To state an IIED claim under Florida law, a plaintiff must plausibly allege: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1367-68 (11th Cir. 2024) (cleaned up).  Defendant argues that the "Big Daddy" remark was not sufficiently outrageous to support an IIED claim.  (Doc. 10 at 6-9).  The Court agrees.

"In Florida, whether conduct is outrageous enough to support [an IIED claim] is a question of law to be decided by the courts at the earliest opportunity, not a question of fact for the jury." *Plowright*, 102 F.4th at 1368 (cleaned up).  IIED liability "attaches only where the conduct has been so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (cleaned up). "One way to determine whether this standard is met is to consider whether the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (cleaned up). Thus, the "required degree of extreme and outrageous conduct is high." *Hutzel v. Franklin*, No. 5:21cv40/RH/MJF, 2021 WL 3491754, at *1 (N.D. Fla. Aug. 9, 2021).

Here, Defendant's employee publicly yelling "alright 'Big Daddy'" at Plaintiff—though possibly demeaning—is not an insult that is "so outrageous in character" and "extreme in degree" to be "beyond all possible bounds of decency[.]" *Plowright*, 102 F.4th at 1368. This is so even considering the unpled assertion that the employee was "gang stalking" Plaintiff when the remark was made. (Doc. 14 at 4). Indeed, courts routinely find far more egregious conduct to be insufficient to satisfy the outrageousness element of an IIED claim.[5] Accordingly, to

---

[5] *See Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870-71 (Fla. 3d DCA 2004) (finding no outrageousness where defendant's employees called plaintiff the "n-word," "monkey," and other racial insults in front of him and repeatedly threatened to fire him while creating false disciplinary actions in support); *see also Lay v. Roux Lab'ys,*

the extent Count III of the third amended complaint pleads an IIED claim, such claim should be dismissed.

## IV.    Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1.    Defendant's motion for judgment on the pleadings (Doc. 10) be **GRANTED** and Counts III and IV of the third amended complaint be **DISMISSED**.

2.    This matter be recommitted to the undersigned for further proceedings on the remaining claims (Counts I and II) in the third amended complaint.

At Pensacola, Florida this 17th day of April 2026.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### Notice to the Parties

Objections to the proposed findings and recommendations set forth above must be filed within fourteen days of the date of this Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not</u>

---

*Inc.*, 379 So. 2d 451, 452 (Fla. 1st 1980) (stating that although "extremely reprehensible," there was no outrageousness where defendant began to threaten plaintiff "with the loss of her job . . . [and used] humiliating language, vicious verbal attacks, racial epithets and called plaintiff [the 'n-word'] when an argument arose concerning a parking space").

control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.